IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-00564-RBJ

CHARLES SCHENDZIELOS,

     Plaintiff,

v.

DAVID SILVERMAN;
IRVIN BORESTEIN;
LESLIE ANN FREIBERG; and
BORENSTEIN & ASSOCIATES, LLC, a Colorado limited liability corporation,

     Defendants.

---

## ORDER

---

     This matter is before the Court on the motion to dismiss [ECF No. 11] from defendants, Irvin Borenstein, Leslie Ann Freiberg, and Borenstein & Associates, LLC (collectively BAA), and on defendant David Silverman's motion to dismiss [ECF No. 12].  For the reasons stated below, BAA's motion to dismiss is denied, and Mr. Silverman's motion to dismiss is granted.

### FACTS

     This case involves an alleged violation of the Fair Debt Collection Practices Act (FDCPA).  ECF No. 11 at 1.  The plaintiff, Mr. Charles Schendzielos, is a resident of Denver, CO.  ECF No. 9 at ¶ 1.  BAA is a law firm in Centennial, CO with a debt collection practice.  *Id.* at ¶ 5.  It was formerly known as Silverman & Borenstein, PLLC.  *Id.* at ¶ 5.  At the time of filing, Mr. Borenstein was a managing member at BAA.  *Id.* at ¶ 13.  Ms. Freiberg was an

associate attorney at BAA.  *Id*.  Mr. Silverman practices law as David Silverman Attorney & Counselor at Law, LLC in Englewood, CO.  *Id.* at ¶ 2.

This case began because Mr. Schendzielos owed $6,854.68 to Barclays Bank Delaware for an unpaid credit card debt.  ECF No. 11 at 2.  The bank hired BAA (then operating as Silverman & Borenstein, PLLC) to collect the debt.  ECF No. 9 at ¶ 7.  BAA began legal proceedings against Mr. Schendzielos in Denver County Court.  ECF No. 11 at 2.  Mr. Schendzielos answered the civil complaint, and the matter was set for trial.  ECF No. 9 at ¶ 7.  Before trial, the parties settled the case and entered into a stipulation.  ECF No. 11 at 2.  The stipulation was filed on March 28, 2013.  ECF No. 9 at ¶ 7.

Under the terms of the stipulation, Mr. Schendzielos agreed to pay the bank $4,500 in installments and to dismiss his counterclaim with prejudice.  ECF No. 11 at 2.  If Mr. Schendzielos failed to make a payment on time, the bank could seek judgment for the "entire amount claimed in the complaint less any payments received."  ECF No. 11 at 2-3.  The stipulation also provided that the bank must notify Mr. Schendzielos in writing ten days before seeking full judgment.  *Id*. at 3.

After Mr. Schendzielos allegedly failed to make a timely payment, BAA filed "a Motion For Entry Of Default Judgment On Broken Stipulation" in Denver County Court on September 19, 2014.  ECF No. 9 at ¶ 8.  The motion claimed that the defendants were entitled to judgment.  *Id.*  Mr. Schendzielos alleges that BAA's motion misrepresented the legal status of his debt.  *Id.* at ¶ 8.  He describes four false representations contained in the motion: (1) it indicated that Mr. Schendzielos had not made a timely answer to the complaint; (2) the motion did not mention that the bank had failed to give notice of the alleged default as required by the stipulation; (3) the

motion did not acknowledge that Mr. Schendzielos had given the bank a timely cure payment for the alleged default; and (4) the motion "falsely conveyed" to the Denver County Court that Mr. Schendzielos "was in default with the court." *Id.*

After the motion was filed, Mr. Schendzielos' counsel of record, Mr. Daniel Schendzielos, contacted Ms. Freiberg at BAA. *Id.* at ¶ 9. Ms. Freiberg acknowledged that the bank had failed to comply with the stipulation by not sending notice to Mr. Schendzielos. *Id.* According to Mr. Schendzielos, neither Ms. Freiberg nor anyone else at BAA took action to correct the "fraud they had committed upon the Denver County Court."[1] *Id.* Based on the representations in the motion, and without awaiting a response from Mr. Schendzielos, the court entered judgment on September 23, 2014. *Id.*

Mr. Schendzielos brought a motion to vacate judgment on September 29, 2014. *Id.* at ¶ 11. The parties resolved their dispute without further court involvement. ECF No. 11 at 3. On January 26, 2015, BAA filed a motion to dismiss with prejudice that was granted by the state court judge. *Id.* Mr. Schendzielos claims that he is entitled to attorney fees and costs in connection with this case. ECF No. 9 at ¶ 16; 15 U.S.C § 1692k(1). He also argues that the defendants are liable for his damages for his emotional distress associated with their unlawful conduct. *Id.*

---

[1] Mr. Schendzielos also alleges that Mr. Borenstein and Mr. Silverman "recklessly hired and supervised" Ms. Freiberg by "leaving her authorized to act in their names" when she filed the motion for entry of default judgment and when she did not correct the misrepresentation. ECF No. 9 at ¶ 13.

## DISCUSSION

### I. Standard of Review

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory are not entitled to an assumption of truth. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### II.  Borenstein & Associates' Motion to Dismiss

BAA contends that Mr. Schendzielos has failed to state a claim upon which relief can be granted. ECF No. 11 at 5. Accordingly, BAA has moved to dismiss on the theory that a false statement violates the FDCPA only if it is made to the consumer or to a third party with a special relationship to the consumer. *Id.* at 2. BAA alleges that a false statement made to a state court judge is not actionable. *Id.* at 5.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. The FDCPA regulates interactions between consumer debtors and "debt collectors." *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir.2002).

Therefore, a defendant can be held liable only if she is a debt collector within the meaning of the FDCPA.[2] *James v. Wadas*, 724 F.3d 1312, 1315-16 (10th Cir. 2013).

The FDCPA contains a number of broad prohibitions: for example, the act proscribes harassment or abuse; false or misleading representations; and numerous delineated "unfair practices" during the collection of debts. *Johnson,* 305 F.3d at 1117; § 1692d-f.  Under the section covering civil liability, the FDCPA allows a plaintiff to recover actual and statutory damages.  § 1692k.  The plaintiff need not show any actual damage to be entitled to damages up to $1,000 and costs and attorney's fees."  *Id.  See Miranda v. Praxis Fin. Solutions, Inc.,* No. 13-CV-0931-WJM-MWJ, 2014 WL 5504745, at *2 (D. Colo. Oct. 31, 2014).

At issue in this case is § 1692e, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e.  In addition to this general ban, § 1692e lists a number of actions that are per se violations.  In interpreting this section, courts have disagreed about whether § 1692e covers a debt collector's representations to a state court judge.  *See Hemmingsen v. Messerli & Kramer, PA,* 674 F.3d 814, 818 (8th Cir. 2012) ("[T]he circuit courts have struggled to define the extent to which a debt collection lawyer's representations . . . in court filings during the course of debt collection litigation can violate §§ 1692d-f.").

The Tenth Circuit has not considered this issue.  As there is no binding precedent, the Court must first determine whether the FDCPA applies where, as here, the alleged false

---

[2]"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  § 1692a.

representations were made in a motion to the court during a debt-collection proceeding. If §

1692e does not apply to such communications, the Court's analysis ends. However, as the Court

finds that representations made to judges are actionable under § 1692e, the Court must next

decide whether Mr. Schendzielos has stated a claim. Finding that Mr. Schendzielos has stated a

claim under the FDCPA, the Court denies BAA's motion to dismiss.

A. The Scope of § 1692

Applying the principles of statutory construction, the Court's task is to determine

Congress' intent, beginning with the plain language. *United States v. Handley,* 678 F.3d 1185,

1189 (10th Cir.2012). If the language is ambiguous, the Court looks to the "legislative history

and underlying public policy of the statute." *Id.* (internal quotations and citations omitted). The

Court reads "the words of the statute in their context and with a view to their place in the overall

statutory scheme." *Id.* (internal quotations and citations omitted).

The express purpose of the FDCPA is very broad. Congress enacted the statute to not

only reduce abusive practices but to "eliminate" them while ensuring that "those debt collectors

who refrain from using abusive debt collection practices are not competitively disadvantaged." §

1692(e). Congress was concerned that abusive debt collection practices were contributing to a

"number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of

individual privacy." § 1692(a). Congress also perceived existing laws to be "inadequate to

protect consumers." § 1692(b).

Like the overarching statutory purpose, § 1692e's central prohibition is expansive as it

disallows deceptive behavior during the "collection of *any* debt." § 1692e (emphasis added).

Before reciting the enumerated violations in the section, Congress expressly notes that the list

does not limit "the general application" of the introductory purpose. *Id.*  This disclaimer further indicates Congress' intent to cover a wide range of conduct.  No language in the section reserves this ban for communications made only to consumers nor is there any express exemption of a debt collector's communications to a judge. *Id.*  In fact, the listed violations include situations where the prohibited conduct is targeted at consumers and at other persons. *See id.* § 1692e(5), (10), (11).  The section should be read to prohibit any deceptive representation if it is made during the process of debt collection without regard for the identity of the audience.

By comparison, Congress expressly limited the statute's breadth in other subsections by distinguishing between consumers and other third parties.  For example, § 1692c narrowly defines whom the audience must be for the conduct to be actionable, as it "regulates debt collectors' communications with 'consumers,' period." *O'Rourke v Palisades Acquisition, XVI, LLC,* 635 F.3d 938, 941 (7th Cir. 2011) (Tinder, J., concurring); §1692c(b).  Additionally, § 1692b establishes specific requirements governing debt collectors' communication with third parties as it regulates how debt collectors acquire location information from "any person other than the consumer." § 1692b.  Under the principles of statutory interpretation, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Miljkovic v. Shafritz & Dinkin, P.A.,* 791 F.3d 1291, 1301-02 (11th Cir. 2015) (internal quotations and citations omitted).

Additionally, in the section addressing civil liability, the FDCPA does not limit its coverage to communications made only to consumers. *Id.*  Under § 1692k(a), "any debt collector who fails to comply with any provision of this subchapter *with respect to any person* is

liable to such person." § 1692k(a) (emphasis added). Without "any language limiting the breadth of [the] word ['any'], it must be read as referring to all of the subject that it is describing." *Miljkovic,* 791 F.3d at 1302 (internal quotations and citations omitted).

In sum, the FDCPA broadly prohibits abusive behavior by debt collectors, and its coverage is not limited to instances where the consumer is the only audience. The extension of § 1692e to communications made to judges adheres to the statute's express purpose. As mentioned above, Congress aimed to prevent unethical debt collectors from gaining an edge on their less principled counterparts. § 1692a. Its objective extends beyond protection of the consumer. Congress sought to eliminate deception across the entire debt collection landscape. "The FDCPA applies to lawyers and law firms who regularly engage in debt-collection activity, even when that activity involves litigation, and categorically prohibits abusive conduct in the name of debt collection, even when the audience for such conduct is someone other than the consumer." *Miljkovic v. Shafritz & Dinkin, P.A.,* 791 F.3d 1291, 1297 (11th Cir. 2015).

Although the Court need not look beyond the clear language and purpose, the legislative history, relevant Supreme Court precedent, and persuasive case law from other circuits also support the Court's view of the breadth of § 1692e. The FDCPA's legislative history confirms the Congressional intent to address a broad range of debt collector behavior. *See* S. Rep. No. 95-382 (1977). For example, the Senate Committee noted "debt collection abuse . . . is a widespread and serious national problem" and that "collection abuse takes many forms." *Id.* The committee continued by identifying that "while unscrupulous debt collectors comprise only a small segment of the industry, the suffering and anguish which they regularly inflict is substantial." *Id.* The Supreme Court has broadly interpreted the FDCPA. *See Heintz v. Jenkins,*

514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); *Jerman v. Carlisle, McNellie, Rini,*

*Kramer & Ulrich LPA,* 130 S Ct 1605, 1611-12 (2010).   In its first consideration, the Supreme

Court expanded the FDCPA's application by holding that attorneys regularly engaged in the

collection of debts are debt collectors subject to liability under the statute.   *Heintz,* 514 U.S. at

299.   The Supreme Court relied upon the plain language of the FDCPA in its holding, reasoning

that "[i]n ordinary English, a lawyer who regularly tries to obtain payment of consumer debts

through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer

debts."   *Id.* at 294; § 1692a.

Additionally, the Supreme Court acknowledged that the original statute expressly

exempted lawyers.   *Id.*   Under the original exemption, the definition of debt collector excluded

"any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client."

*Id.* (internal citations omitted).   Congress repealed that exemption in 1986, and it did not adopt

any "narrower, litigation-related exemption."   *Id.* at 294-95.   Therefore, the Supreme Court

reasoned that "[w]ithout more, then, one would think that Congress intended that lawyers be

subject to the Act whenever they meet the general 'debt collector' definition."   *Id.* at 295.

After *Heintz,* the FDCPA has applied "to the litigating activities of lawyers."   *Id.* at 294.

Such activities, as other circuits have held, may include the "service upon a debtor of a complaint

to facilitate debt collection efforts," or "statements in written discovery documents."   *James v.*

*Wadas,* 724 F.3d 1312, 1316 (10th Cir. 2013) (internal quotations and citations omitted).

Furthermore, after *Heintz*, Congress considered amending the FDCPA's definition of

"communications" to expressly exempt legal pleadings.   *See Sayyed v. Wolpoff & Abramson,* 485

F.3d 226, 231 (4th Cir.2007).   That conversation resulted in a relatively minor change: Congress

amended § 1692e(11) to exempt formal pleadings "made in connection with a legal action" from the requirement that all written communications to the consumer state that they are from a debt collector.  § 1692e(11); § 1692e(11); *see Sayyed,* 485 F.3d at 231.  Congress made no other constraints on the statute's application to legal pleadings.  As a Fourth Circuit panel notes, if "conduct in the course of litigation, or even formal pleadings more specifically, were entirely exempt from the FDCPA, § 1692e(11)'s express exemption of formal pleadings would be unnecessary." *Sayyed,* 485 F.3d at 231 (holding that the statute applies to law firms whose debt-collecting activity is litigation and that the FDCPA applies to communications made by a debt collector to a debtor's attorney).

The Fourth Circuit continued, "the amendment by its terms in fact suggests that *all* litigation activities, *including* formal pleadings, are subject to the FDCPA, *except* to the limited extent that Congress exempted formal pleadings from the particular requirements of § 1692e(11)." *Id.* (emphasis in original).  Had Congress desired to exempt other litigation activities from § 1692e, it "presumably would have done so expressly." *Sayyed,* 485 F.3d at 231 (internal quotations and citations omitted).  The narrow scope of the amendment to § 1692e(11) demonstrates that Congress accepted the *Heintz* ruling and intended § 1692e to retain broad coverage over litigation activities, including motions filed with state court judges.

In its second consideration of the FDCPA, the Supreme Court refused to remove a wide range of debt-collector conduct from the statute's reach.  *Jerman*, 559 U.S. at 577 (holding that the statute's bona fide error defense does not permit a debt collector to escape liability due to an incorrect interpretation of the legal requirements of the Act).  The Court reasoned that such "blanket immunity" would be inconsistent with the FDCPA's "broadly worded prohibitions on

debt collector misconduct" and Congress' express purpose of eliminating "abusive debt collection practices." *Id.* at 602.  Although it addressed a different section of the FDCPA, the *Jerman* decision is instructive as it demonstrates the breadth of the statute's coverage and that the Supreme Court is disinclined to immunize a significant swath of misconduct.[3]

The circuit courts are split on the issue of false or deceptive representations made to judges.  In its motion, BAA relies on Seventh Circuit case law, which narrowly interpreted § 1692e in holding that it does not apply to communications made to a court.  *O'Rourke,* 635 F.3d at 941.  In *O'Rourke*, the debt collector attached a document to its complaint that resembled a credit card statement but that was not an actual copy of the consumer's statement. *Id.* at 939. The Seventh Circuit held that the debt collector's use of a document to mislead the judge, while a "dubious method" to collect debts, did not fall within the scope of § 1692e. *Id.* at 940-41.  The circuit created a bright-line rule, limiting the applicability of § 1692e only to consumers and to those who "stand in the shoes of the consumer." [4] *Id.* at 943.  The panel determined that judges do not stand in the shoes of the consumer, as they do not "have a special relationship with consumers," and their "role is to ensure that the process is followed." *Id.* at 944.  The Supreme Court denied certiorari in *O'Rourke,* so the Seventh Circuit's decision stands.  *O'Rourke v Palisades Acquisition, XVI, LLC,* 132 S Ct 1141 (2012).

---

[3] In addition to *Heintz* and *Jerman,* the Supreme Court has only considered the FDCPA one other time. *See Marx v. Gen. Revenue Corp.,* 133 S. Ct. 1166, 185 L. Ed. 2d 242 (2013) (holding that the "costs provision of the FDCPA is not contrary to the federal rule of civil procedure governing awards of costs . . . so a district court may award costs to prevailing defendants in FDCPA cases without finding that the plaintiff brought the case in bad faith and for the purpose of harassment.").

[4] Circuit courts that have interpreted § 1692e to apply only to the actual consumer and "those who stand in their shoes" have defined this relationship to mean those who have the authority to receive communications and to act on the consumer's behalf. *See, e.g., Wright v. Fin. Serv. Of Norwalk, Inc.,* 22 F.3d 647, 650 (6th Cir. 1994).

BAA later filed a motion for leave to cite supplemental authority [ECF No. 31] in which it presents a recent case from the Eleventh Circuit. *See Miljkovic v. Shafritz & Dinkin, P.A.,* 791 F.3d 1291 (11th Cir. 2015) (involving the law firm/debt collector's sworn reply regarding the garnishment of the debtor's wages). However, in *Miljkovic,* the Eleventh Circuit held that documents filed in court in the course of debt collection proceedings *are* actionable under the FDCPA, but that the appellant's allegations were insufficient to establish a "deceptive means of collecting a debt." *Id.* at 1307. Therefore, the *Miljkovic* panel affirmed the district court's decision on the grounds that the appellant failed to state a claim. *Id.*

The Eleventh Circuit rejected the logic from *O'Rourke* that communications made to the state court and not to the consumer directly are not actionable. *Miljkovic,* 791 F.3d at 1303. Judge Charles R. Wilson, on behalf of the unanimous panel, wrote "absent a statutory exception, then, documents filed in court in the course of judicial proceedings to collect on a debt, like Appellees' sworn reply, are subject to the FDCPA." *Id.* at 1295. The Eleventh Circuit reasoned that the "Act's prohibitions are not limited to representations made directly to or conduct directed solely at consumers," and that "documents submitted to a court in the course of judicial proceedings to collect on a debt fall within the ambit of litigating activities," as outlined in *Heintz. Id.* at 1303 n.8 (internal quotations and citations omitted). The panel argued that exempting misleading documents submitted to a court from the FDCPA would "compel absurd results." *Id.* (internal quotations and citations omitted).

In contrast to the Seventh Circuit, both the Sixth and Eighth Circuits adopted a broader application of § 1692e. *Hemmingsen v. Messerli & Kramer, P.A.,* 674 F.3d 814, 818 (8th Cir. 2012); *Hartman v. Great Seneca Financial Corporation,* 569 F.3d 606, 613 (6th Cir. 2009). The

Eighth Circuit implemented a case-by-case approach for deciding when the FDCPA applies to representations made to judges. *Hemmingsen,* 674 F.3d at 818-819.  In *Hemmingsen,* the debtor alleged that the debt collector violated the FDCPA by making false statements and misrepresentations in a brief filed in state court. *Id.*  The Eighth Circuit affirmed the district court's decision to grant the debt collector's motion for summary judgment but noted that the circuit was "unwilling to adopt the district court's broad ruling that false statements not made directly to a consumer debtor are never actionable under § 1692e." *Id.*

In *Hartman,* the Sixth Circuit considered a similar fact pattern to *O'Rourke.*  569 F.3d at 609-613.  The consumer claimed that the debt collector attached an exhibit to the state-court complaint in violation of § 1692e. *Id.*  The consumer argued that the exhibit "facially resembled a credit-card statement," and the collector misrepresented the document as an actual statement of the consumer's account. *Id.* at 611.  The Sixth Circuit held that the consumer had raised a genuine issue of material fact over whether the debt collector's attached statement to the complaint was misleading or deceptive. *Id*. at 613.  The circuit remanded the case to determine whether the exhibit attached to the debt collector's pleading was misleading.  The issue for the Sixth Circuit was not whether § 1692e covered the exhibit, as it applied the provision to the attachment without discussion, but rather whether deception did actually occur. *Id.* at 613.

One must not lose sight of the bigger picture.  Debt collectors are increasingly reliant on state courts to collect debts, often through default judgments. *See O'Rourke,* 635 F3d at 40 (Tinder, J., concurring) (noting that courts are a medium through which debt collection information is conveyed to consumers).  The issue of whether § 1692e applies to a debt

collector's communications to a judge can have a significant impact on the depth of consumer

protection available during these suits.  As the *O'Rourke* concurrence noted,

> It is true that judges do not stand in consumers' shoes, but aren't state courts a medium through which debt collection information is conveyed to consumers? . . . Again, recall that [the consumer] received the document at issue only after it was provided to the court. And it came to him as a part of the packet of materials associated with a lawsuit that could result in a judgment against him.

*O'Rourke*, 635 F3d at 949 (Tinder, J., concurring).  Given the central role that judges play in debt

collection, it would in my view be incongruous to permit debt collectors more latitude solely

because they are communicating to a judge.  The involvement of a judge does not change the

essence of the dynamic: the debt collector is attempting to collect a debt owed by the consumer.

In that process, there are many opportunities for abusive practices, which Congress so clearly

intended to eliminate.

As it is "a remedial statute, [the FDCPA] should be construed liberally in favor of the

consumer."  *Johnson v. Riddle,* 305 F.3d 1007, 1117 (10th Cir.2002).  As the Supreme Court

noted, "many debt collectors are compensated with a percentage of money recovered, and so will

have a financial incentive to press the boundaries of the Act's prohibitions on collection

techniques."  *Jerman,* 559 U.S. at 602.  With that backdrop, the importance of prohibiting false

or deceptive representations does not fade solely because the collector is speaking to the judge

and not directly to the consumer.

B.  Mr. Schendzielos' Claim

In order to state a claim under the FDCPA, Mr. Schendzielos must allege that a debt

collector violated some provision of the FDCPA when collecting a debt from a consumer.

*Maynard v. Cannon,* 401 F. App'x 389, 393 (10th Cir. 2010).  The violation can be either

through act or omission. *Villanueva v. Account Discovery Sys., LLC,* 77 F. Supp. 3d 1058, 1073 (D. Colo. 2015). The Court reviews Mr. Schendzielos' complaint regarding each of these elements. First, he has sufficiently alleged that he is a "consumer." ECF No. 9 at ¶ 1. The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." § 1692a(3). Second, Mr. Schendzielos owes a "consumer debt" to Barclays Bank Delaware. ECF No. 9 at ¶ 7. Third, his complaint adequately alleges that BAA was a debt collector in that the firm "regularly used instrumentalities of interstate commerce or the mails in the collection or attempted collection of alleged obligations of consumers" as defined by § 1692a(6). *Id.* at ¶¶ 3-5.

Finally, Mr. Schendzielos' complaint alleges adequate facts to demonstrate that the motion filed in Denver County Court contained false representations in violation of § 1692e. ECF No. 9 at 1-6. Mr. Schendzielos contends that the motion "falsely represented the legal status of the debt." *Id.* at ¶ 8; *See* § 1692e(2)(A)( prohibiting the "false representation of . . . the character, amount, or legal status of any debt."). He claims the motion omitted the fact that he made a timely answer to the complaint. *Id.* He also asserts that the bank did not give him ten days written notice as the Stipulation required and that the motion did not reflect the timely cure payment he had made. *Id.* Finally, he argues that BAA indicated in its motion that Mr. Schendzielos was in default with the court. *Id.* Mr. Schendzielos also alleges that Ms. Freiberg later "acknowledged that the pleading filed with the Denver County Court was factually deceptive." *Id.* at ¶ 9. When taken as true, these allegations demonstrate that BAA violated the general premise of § 1692e by making false or deceptive representations. Therefore, Mr. Schendzielos has adequately alleged all of the elements of a violation of § 1692e.

Many circuits employ the "least sophisticated consumer" test when analyzing whether a particular representation was deceptive. *See Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993) (listing cases). The least sophisticated consumer standard is an objective approach to ensure "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Hartman,* 569 F.3d at 612 (internal quotations and citations omitted). The least sophisticated consumer is not considered a "dimwit," but is perceived as "uninformed, naïve, and trusting." *Miranda,* 2014 WL 5504745, at *2 (internal citations omitted). This individual does not have "the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer." *Ferree v. Marianos,* 129 F.3d 130, 1997 WL 687693, at * 1 (10th Cir. 1997) (internal quotations and citations omitted). However, courts have also maintained "the concept of reasonableness without extending FDCPA protection to bizarre or idiosyncratic interpretations of collection notices and other practices." *Sowers v. Wakefield & Associates,* No. 09-CV-02873-BNB-MEH, 2010 WL 3872901, at *4-5 (D. Colo. Sept. 29, 2010) (internal quotations and citations omitted).

The Tenth Circuit has not expressly adopted this standard, but in an unpublished opinion, the circuit did apply "an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector." *Ferree,* 1997 WL 687693, at *1 (internal quotations and citations omitted). The least sophisticated consumer standard reflects the notion that the FDCPA is a remedial statute intended to offer broad protections to consumers. *Nikkel v. Wakefield & Associates, Inc.,* No. 10-CV-02411-PAB-CBS, 2012 WL 5571058, at *10 (D. Colo. Nov. 15, 2012) (internal quotations and citations omitted).

Some courts have also required the consumer to allege that the debt collector's conduct was materially misleading. *Miranda,* 2014 WL 5504745, at *2. To be materially misleading, a

false statement must "impact the least sophisticated consumer's decisions with respect to a debt." *Id.* (internal quotations and citations omitted).  This is typically a determination of fact for the jury.  *Lucero v. Bureau of Collection Recovery, Inc.,* No. CIV 09-0532 JB/WDS, 2012 WL 681797, at *12-13 (D.N.M. Feb. 28, 2012).  However, in some instances, "courts have increasingly treated as questions of law, various judgments about the way in which the least sophisticated consumer would interpret particular debt collection claims."  *Id.* at *13.  As an example, if a consumer just presents the text of the communication and has "no other evidence to offer, and then if there was nothing deceptive-seeming about the communication to even the least-sophisticated consumer, the court would have to dismiss the case.  *Id.* (internal quotations and citations omitted).

Applying the test here, the Court finds that BAA's misrepresentations could have impacted the decision making of the least sophisticated consumer.  A court proceeding can be confusing for the least sophisticated consumer to navigate.  Thus, it does not matter that Mr. Schendzielos is an attorney himself.  In *Miljkovic,* the Eleventh Circuit found that the sworn reply was not "misleading or deceptive in the traditional sense.  It does not misrepresent the nature or effect of the writ of garnishment."  *Miljkovic,* 791 F.3d at 1306.  The sworn reply also did not "erroneously state the amount of the debt owed."  *Id.*  Rather, the reply communicated the debt collector's legal position.  *Id.*  But the facts here are different.  Mr. Schendzielos alleges that the motion did make false representations about the status of his debt and about his position with the Denver County Court.  ECF No. 9 at ¶ 8.  Therefore, the Court finds that Mr. Schendzielos has alleged sufficient facts to establish that the misrepresentations could deceive the least sophisticated consumer.  Although Mr. Schendzielos only submits his summary of the

misrepresentations without further evidence of how the statements deceived him, the Court finds that misrepresentations are potentially deceptive on their face. Therefore, it is for the jury to decide whether the misrepresentations were materially misleading, and the Court finds that Mr. Schendzielos has stated a claim under § 1692e.

### III.    Mr. Silverman's Motion to Dismiss

Mr. Silverman's motion to dismiss [ECF No. 12] alleges that Mr. Schendzielos has failed to state a claim against him. Mr. Silverman echoes BAA's position that a debt collector's representations to a state court judge are not actionable under § 1692e. ECF No. 12 at 4. The inquiry as to whether Mr. Schendzielos has stated a claim follows the same analysis as with the claim against BAA. Here, the first two elements of whether Mr. Schendzielos was a consumer debtor and whether Mr. Silverman qualifies as a debt collector are not in issue. However, the real inquiry is whether Mr. Silverman committed a prohibited act in violation of the FDCPA. Mr. Silverman claims that he was not personally involved in the case as the September 19 motion was filed after he was no longer a member of the responsible law firm. ECF No. 12 at 5.

Mr. Schendzielos alleges that the motion filed on September 19, 2014 was "filed in the name of and by the authority of all Defendants." ECF No. 9 at ¶ 8. He further claims that "sometime between September 19, 2014 and October 28, 2014," Silverman & Borenstein, PLLC changed its name to BAA. *Id.* at ¶ 10. After the change, BAA continued as counsel for Barclays in the collection proceedings. However, Mr. Schendzielos alleges that BAA did not file a pleading bearing its name in Denver County Court until November 5, 2014. ECF No. 9 at ¶ 10. Mr. Schendzielos also claims that Mr. Borenstein and Mr. Silverman authorized firm associates to "act on their behalf" and that Mr. Borenstein and Mr. Silverman "authorized the systems

under which form motions for judgment" were filed. *Id.* at ¶ 12. Finally, he alleges that both managing members were "reckless" in their hiring and supervision of their associate Ms. Freiberg in allowing her to act on their behalf when filing the motion. *Id.* at ¶ 13.

In his response to Mr. Silverman's motion to dismiss, Mr. Schendzielos attaches two filings from the Colorado Secretary of State. ECF No. 15-1; 15-2. The first is an article of amendment filed on October 28, 2014 that changes the name of Silverman & Borenstein, PLLC to Borenstein & Associates, LLC. *Id.* at 15-1. Under Colorado Law, "the articles of organization shall be amended" when "there is a change in the name of the limited liability company" or "there is a false or erroneous statement in the articles of organization." C.R.S. § 7-80-209. The second attachment is a periodic report filed on November 11, 2013 by Silverman & Borenstein, PLLC. ECF No. 15-2. A limited liability company (LLC) is required to submit an annual periodic report to ensure that its information is current and correct with the Secretary of State. C.R.S. § 7-90-501. Mr. Schendzielos offers this document to assert that Mr. Silverman was once the registered agent of Silverman & Borenstein, LLC. ECF No. 15 at 3.

In support of his motion to dismiss, Mr. Silverman also attaches a number of filings from the Colorado Secretary of State. ECF No. 12-1; 12-2; 12-3. He urges the Court to take judicial notice of these documents to confirm that he was no longer practicing law with Mr. Borenstein on September 19, 2014 when the motion was filed with the Denver County Court. ECF No. 12 at 1-2. In general, courts only consider "the four corners" of the plaintiff's complaint as we are "reviewing the sufficiency of the complaint alone." *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir.2002). We typically cannot consider materials attached to a defendant's motion to dismiss without converting the motion into one for summary judgment.

Fed.R.Civ.P. 12(b); *Tal v. Hogan,* 453 F.3d 1244, 1265 (10th Cir. 2006) (internal citations omitted).  However, in a Rule 12(b)(6) motion, a court may take judicial notice of some facts without triggering such a conversion.  *Id.*

A court may "take judicial notice of its own files and records, as well as facts which are a matter of public record."  *Van Woudenberg ex rel. Foor v. Gibson,* 211 F.3d 560, 568 (10th Cir.2000), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946, 955 (10th Cir.2001).  However, "we may take judicial notice of the existence of the opinions of other courts but not the truth of the facts recited therein."  *Gilchrist v. Citty,* 71 F. App'x 1, 3 (10th Cir. 2003) (internal quotations and citations omitted).  Therefore, while the Court can take judicial notice of the attachments to Mr. Silverman's motion to dismiss as they are public records, it cannot take the facts asserted in the filings to be true.

Mr. Silverman attaches three documents that he claims show "that the Silverman & Borenstein, PLLC firm was effectively dissolved" by September 19, 2014 when the motion was filed in Denver County Court.  ECF No. 12 at 2.  The first document is an article of organization, which Mr. Borenstein filed on September 17, 2014.  ECF No. 12-1.  An LLC's article of organization acts as a charter to establish the existence of the LLC and to present basic information about the business.  *See* C.R.S. § 7-80-204.  Mr. Silverman claims that this filing demonstrates that "Irv Borenstein formed his new practice, Borenstein & Associates, LLC" on that day.  ECF No. 12 at 2.  Mr. Silverman submits a second article of organization, which he filed on September 18, 2014.  ECF No. 12-2.  He alleges that this document illustrates that "Silverman formed his own practice" on that date.  ECF No. 12 at 2.

The final document is the same article of amendment that Mr. Schendzielos included in his response, identifying that Silverman & Borenstein, PLLC changed its name to Borenstein & Associates, LLC on October 28, 2014.  ECF No. 12-3.  Mr. Silverman argues that all three filings prove that the September 19, 2014 motion was filed "after both Mr. Silverman and Mr. Borenstein had opened their new law practices" thereby relieving him of any personal liability.  ECF No. 12 at 2.

As requested, the Court takes judicial notice of these three filings.  However, the Court can only consider their existence, which is limited to the nature of the form and the filing date, so taking judicial notice is not that helpful to Mr. Silverman's argument.  The issue here is not whether these documents were filed or on what date they were filed; rather, the argument is over whether Mr. Silverman was personally involved in making false or deceptive representations to the Denver County Court.  In order to decide that Mr. Silverman had no role in the preparation or filing of the September 19 motion, the Court would need to consider the filings as proof that the two lawyers had initiated changes in their professional relationship.  Staying within the proper boundaries of judicial notice, the Court can only determine that Mr. Borenstein and Mr. Silverman filed two articles of organization on September 17 and 18.

Turning back to Mr. Schendzielos' complaint, the question remains whether he alleges sufficient facts to state a claim against Mr. Silverman.  He claims that the motion "on its face" indicated that "all Defendants" authorized and filed the document containing the false representations.  ECF No. 9 at 3.  He further alleges that Silverman & Borenstein, PLLC changed its name sometime between September 19, 2014 and October 28, 2014.  *Id.* at 4.  While Mr. Schendzielos offers the filing that shows Silverman & Borenstein, PLLC changing its name on

October 28, 2014, he does not offer any more evidence to show that Mr. Silverman had not left

BAA prior to September 19 or that he was personally was involved in the preparation of and

filing of the motion.  A violation of § 1692 requires an act by the debt collector, and it is unclear

from Mr. Schendzielos' allegations whether Mr. Silverman had any personal involvement in the

motion.  Even when taking Mr. Schendzielos' allegations as true and construing them in his

favor, the Court cannot find that he has alleged sufficient facts to state a claim against Mr.

Silverman.

**ORDER**

BAA's motion to dismiss [ECF No. 11] is DENIED.  Mr. Silverman's motion to dismiss

[ECF No. 12] is GRANTED.

DATED this 14th day of October, 2015

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge